# United States Court of Appeals for the Fifth Circuit

No. 22-10495
Summary Calendar

United States Court of Appeals
Fifth Circuit

**FILED**
December 13, 2022

Lyle W. Cayce
Clerk

Weslease 2018 Operating, L.P.,

*Plaintiff—Appellee*,

*versus*

Innovative Sand Solutions, L.L.C.; Linda Behan; Bull Moose Pipeline, L.L.C.; Dale Behan,

*Defendants—Appellants*.

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 4:20-CV-776

Before King, Higginson, and Willett, *Circuit Judges*.
Per Curiam:[*]

After a bench trial, the district court entered judgment in favor of Plaintiff Weslease 2018 Operating, LP ("Weslease"), against Defendants Innovative Sand Solutions, LLC ("Innovative Sand"), Bull Moose Pipeline, LLC ("Bull Moose"), Dale Behan, and Linda Behan. We AFFIRM.

---

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

No. 22-10495

## I

Dale and Linda Behan owned and operated Innovative Sand and sought to purchase sand-processing equipment for the company. So, in 2016, Linda Behan and Innovative Sand signed a lease agreement ("Finance Lease") with the Weslease Income Growth Fund, L.P. ("WIGF"), the predecessor in interest of Weslease, to facilitate the acquisition of the equipment. The parties agreed that the lease in question was a finance lease as defined in Article 2A of the Uniform Commercial Code. Under the terms of the agreement, WIGF was to supply $400,000 to Linda Behan and Innovative Sand for the purchase of equipment from a third-party supplier, Blanco Sands. In exchange, Innovative Sand would pay back the principal plus interest over a set period of time.

WIGF disbursed $200,000 to Innovative Sand. Upon receiving that disbursement, Innovative Sand forwarded the money to Blanco Sands. Four months later, however, Blanco Sands returned the $200,000 to Innovative Sand and refused to deliver the equipment. Instead of repaying WIGF, Innovative Sand quickly transferred the $200,000 to Bull Moose, another LLC owned and operated by the Behans, which then used the money to pay off unrelated debts. The transfer rendered Innovative Sand insolvent and prevented the return of the $200,000 to WIGF. WIGF was never repaid, in either principal or interest.

Weslease, the successor in interest to WIGF, sued Innovative Sand, Bull Moose, and the Behans in federal district court under the court's diversity jurisdiction, seeking damages under the Finance Lease. *See* 18 U.S.C. § 1332(a). After a bench trial, the district court entered judgment for Weslease, holding Defendants jointly and severally liable.

Defendants appealed the judgment.

## II

"The standard of review for a bench trial is well established: findings of fact are reviewed for clear error and legal issues are reviewed *de novo*." *Deloach Marine Servs., LLC. v. Marquette Transp. Co.*, 974 F.3d 601, 606 (5th Cir. 2020) (quoting *Luwisch v. Am. Marine Corp.*, 956 F.3d 320, 326 (5th Cir. 2020)). On appeal, Defendants raise several arguments, none of which are convincing.

First, Defendants argue that the Finance Lease is not enforceable because WIGF did not deliver the equipment for which Innovative Sand sought financing. But under the parties' arrangement, WIGF was to finance the equipment, not supply it (Blanco Sands was the intended supplier). The agreement expressly provides that "[t]he parties agree that this lease is a 'Finance Lease' as defined by ARTICLE 2A of the Uniform Commercial Code." *See also* TEX. BUS. & COM. CODE § 2A.103(a)(7) (defining finance leases under Texas's version of the Uniform Commercial Code);[1] 4C Anderson U.C.C. § 2A-103:18 (3d ed.) ("A finance lease is really a loan of capital from a finance company to an equipment purchaser[.]"). Defendants' argument therefore fails.

Second, Defendants contend that the Finance Lease is unenforceable under the statute of frauds because WIGF did not sign the contract. Under Texas law, however, only the party against whom enforcement is sought must have signed the contract. *See* TEX. BUS. & COMM. CODE § 2A.201(a)(2). Here, the contract is sought to be enforced against Defendants, not WIGF or its successor.

---

[1] The parties agree that Texas law governs the issues in this appeal.

Third, Defendants contend that WIGF orally modified the contract to permit Innovative Sand to transfer the $200,000 to Bull Moose. But the parties agreed in writing that no oral modification or waiver would be effective, and we honor their agreement. *See* Tex. Bus. & Com. Code § 2A.201(a)(2) (statute of frauds); Tex. Bus. & Com. Code § 2A.208(b) (no-modification clauses in signed lease agreements are enforceable).

Finally, Defendants argue that the district court should not have pierced the corporate veil to impose liability jointly and severally upon Dale Behan. But Texas law permits veil piercing when a defendant abuses the corporate structure to perpetuate a fraud or evade an existing obligation for his own benefit. *See SSP Partners v. Gladstrong Invs. (USA) Corp.*, 275 S.W.3d 444, 454 (Tex. 2008); *see also Matter of Ritz*, 832 F.3d 560, 567–68 (5th Cir. 2016) (describing Texas law). Here, the district court found that Dale moved nearly all of the assets from Innovative Sands to Bull Moose, both of which were under his control, with the intent to defraud and avoid repaying WIGF, for his own personal benefit. We are satisfied that the record evidence supports the district court's factual finding, and Defendants fail to identify any evidence sufficient to overcome the deferential standard of review. We therefore conclude that the court did not err in piercing the corporate veil.

AFFIRMED.